FILED
IN OPEN COURT

AUG 2 3 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:23-cr-66 |
| | ) | |
| v. | ) | 18 U.S.C. § 1349 |
| | ) | Conspiracy to Commit Wire Fraud |
| LAPONDIA WALLACE, | ) | (Count 1) |
| | ) | |
| Defendant. | ) | 18 U.S.C. §§ 1343 and 2 |
| | ) | Wire Fraud |
| | ) | (Counts 2-4) |
| | ) | |
| | ) | 18 U.S.C. §§ 1341 and 2 |
| | ) | Mail Fraud |
| | ) | (Count 5) |
| | ) | |
| | ) | 18 U.S.C. §§ 1014 and 2 |
| | ) | Making a False Statement to the SBA |
| | ) | (Counts 6-8) |
| | ) | |
| | ) | 18 U.S.C. §§ 1028A and 2 |
| | ) | Aggravated Identity Theft |
| | ) | (Counts 9-10) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C) & |
| | ) | 28 U.S.C. § 2461 |
| | ) | Asset Forfeiture |

**INDICTMENT**

August 2023 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

<u>GENERAL ALLEGATIONS</u>

1. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by

enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

3. One of these new programs was the SBA Paycheck Protection Program ("PPP"), which provided for loans as a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA forgave all or part of loans if the applying business kept its employees on the payroll for eight weeks and submitted documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution.

4. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants are also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intend to use loan proceeds only for the authorized and not any duplicative purposes. Successful applicants could subsequently apply for a "Second Draw" PPP loan, which additionally required a certification that the applicant had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period.

5. Another related response to the COVID-19 pandemic was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000.00 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits or for expansion of the business.

6. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury and applicants could apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including: information as to the gross revenues for the business twelve months prior to the disaster; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

7. In addition to the PPP loans and the expansion of the EIDL loans, the government also expanded unemployment benefits to help workers impacted by the COVID-19 pandemic. This expansion substantially increased the amount of money paid to claimants and increased access to cover those who had not traditionally qualified for unemployment benefits, like contractors, the self-employed, and gig workers.

8. The Virginia Employment Commission ("VEC") is responsible for administering the unemployment compensation program in the Commonwealth of Virginia. This unemployment compensation program provides temporary financial assistance to individuals who become unemployed through no fault of their own. Specifically, prior to the expanded COVID-19 benefits,

eligible recipients received a minimum of $158 per week in traditional unemployment insurance ("UI") benefits.

9. Unemployed workers in the Commonwealth of Virginia can file for UI benefits either by phone or through the VEC online portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer.

10. The VEC application for a UI claim requires entry of personally identifiable information, including the applicant's name, date of birth, social security number, address, and phone number. It also requires answering a series of questions to verify eligibility – namely, the applicant's work history, name of employer, reason for separation, and a certification that the applicant is ready, willing, and able to work. To qualify for Pandemic Unemployment Assistance ("PUA") benefits, as expanded under the CARES Act, the applicant must further certify that they lost their job due to the COVID-19 pandemic.

11. Once the VEC approves a UI claim, claimants must recertify their unemployment status on a weekly basis. The claimant must certify that they are ready, willing, and able to work each day during the weeks they claimed UI. The claimant must also certify that they did not apply or receive funds from other sources, including pandemic-related benefits. Both initial applications and weekly recertifications are attested to as truthful under penalty of perjury.

12. Successful applicants may choose whether to have VEC deposit their unemployment benefits directly in a linked bank account or loaded onto a prepaid debit card (called "Way2Go" cards) which are shipped to the applicant via the United States Postal Service ("USPS") to the physical address listed on the application. For applicants who choose a debit card, a Personal Identification Number ("PIN") for the card is sent to the address listed on the application in a separate mailing. Prepaid debit cards are automatically reloaded with newly disbursed funds via electronic transfers using the Internet.

13. The defendant was the leader of a fraud ring involving no fewer than eight coconspirators.

14. The defendant filed or is otherwise associated with approximately 25 fraudulent PPP, EIDL, and EIDL advance loans. This resulted in approximately $131,282.00 in actual loss to the government and lenders as well as approximately $270,457.00 in intended loss.

15. The defendant filed or is otherwise associated with eight fraudulent claims for pandemic-unemployment benefits, which resulted in approximately $200,238.00 in additional actual loss to the VEC and the United States.

16. The defendant withdrew substantial amounts of the proceeds as U.S. currency before the funds could be seized and returned to the victims.

17. The defendant further spent significant sums on gambling, travel, and luxury retail items like clothing and shoes.

## COUNT ONE

THE GRAND JURY CHARGES THAT:

Between in or about March 2020 and continuing in or about at least July 2021, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, LAPONDIA WALLACE, the defendant herein, and other conspirators known and unknown, did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown, to commit the following offense against the United States: to knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises affecting a financial institution, for which the defendants transmitted and caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds for the purpose of executing the scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.

### WAYS, MANNER AND MEANS OF THE CONSPIRACY

The ways, manner, and means by which the foregoing objectives of the conspiracy to commit wire fraud were to be accomplished included, but were not limited to the following:

1. The primary purpose of the conspiracy and artifice was for the defendant and her coconspirators to fraudulently obtain pandemic-related benefits in the form of SBA-sponsored EIDL loans, SBA PPP loans, and UI benefits through the PUA program.

2. It was part of the conspiracy and scheme and artifice that the defendant submitted loans for applications under the EIDL, PPP, and PUA programs that contained false statements, misrepresentations, and omissions related to the defendant and her coconspirators' income, employment, and claimed business entities.

3. It was further part of the conspiracy and scheme and artifice that the defendant recruited members of her family and friends, including her husband, Terrence Wallace, to also submit fraudulent applications for pandemic-related benefits and in some cases the defendant withdrew some of the awarded funds for her own personal use.

4. It was further part of the conspiracy and scheme and artifice that the defendant falsely attested on the pandemic loan applications that the information presented was true and accurate.

5. It was further part of the conspiracy and scheme and artifice that the defendant falsely claimed to be the owner of several business entities to apply for pandemic-related benefits.

6. It was further part of the conspiracy and scheme and artifice that the defendant falsely claimed that these businesses had multiple employees and gross revenues of tens of thousands of dollars.

7. It was further part of the conspiracy and scheme and artifice that the defendant falsely represented her and her coconspirators' work history to the VEC in applying for PUA benefits, and falsely represented that she and her coconspirators were not receiving income from other sources, including other pandemic benefits and loans.

8. It was further part of the conspiracy and scheme and artifice that the defendant and coconspirators obtained hundreds of thousands of dollars of fraud proceeds by wire transfer, which the defendant appropriated for personal use.

9. It was further part of the conspiracy and scheme and artifice that these VEC deposits by wire transfer resulted in electronic transfers of information to occur between locations in the Eastern District of Virginia and terminals and/or computers outside of the Commonwealth of Virginia.

10. It was further part of the conspiracy and scheme and artifice that the defendant caused the VEC to mail Way2Go debit cards, including at least one of which that was mailed to her address in Newport News, Virginia, which was subsequently loaded with fraudulently obtained unemployment benefits.

(In violation of Title 18, United States Code, Sections 1349 and 1343)

## COUNT TWO THROUGH FOUR
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. On or about the dates and in the matter set forth below, in the Eastern District of Virginia, LAPONDIA WALLACE, the defendant herein, aided and abetted by others, along with other conspirators known and unknown, did knowingly and willfully attempt to execute a scheme and artifice to defraud and for obtaining property by means of materially false and fraudulent pretenses, representations and promises.

3. On or about the dates set forth below, in the Eastern District of Virginia, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property through materially false pretenses, representations, and promises as described above, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, signals, and sounds as set forth in the table below, and from or through locations in the Eastern District of Virginia from, to or through computers and terminals located outside of the Commonwealth of Virginia:

| COUNTS | DATE (on or about) | TRANSACTION |
|---|---|---|
| 2 | 6/30/2020 | The deposit by wire transfer of $758.00 of fraudulent unemployment benefits in the defendant's bank account (last four digits: 6600). |
| 3 | 7/1/2020 | The deposit by wire transfer of $758.00 of fraudulent unemployment benefits in Terrence Wallace's bank account (last four digits: 0169). |
| 4 | 5/21/2021 | Defendant electronically submitted an application for a PPP loan on behalf of her husband, Terrence Wallace, and fraudulently certified that his business had a reduction in gross receipts in excess of 25% over the past year, causing the deposit by wire |

|  |  | transfer of $20,833.00 in Terrence Wallace's bank account (last four digits: 0656). |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
## (Mail Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. From in or about July 2020 through in or about at least July 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia, LAPONDIA WALLACE, the defendant herein, aided and abetted by others known and unknown, having devised and intended to devise a scheme and artifice to defraud and for obtaining property by means of materially false and fraudulent pretenses, representations and promises in the Eastern District of Virginia and elsewhere, did knowingly cause to be delivered by U.S. mail according to the directions thereon, the following matters and things:

| COUNT | DATE (on or about) | TRANSACTION |
| --- | --- | --- |
| 5 | 8/4/2020 | Defendant submitted an application for unemployment benefits on behalf of D.C. on or about 7/17/2020 and weekly recertifications thereafter that contained false statements and misrepresentations and omissions related to the fact that D.C. was no longer able and willing to work in the Commonwealth in Virginia, causing the mailing of a VEC Way2Go card to the defendant's address in Newport News, which was subsequently loaded with fraudulently obtained unemployment benefits. |

(In violation of Tile 18, United States Code, Sections 1341 and 2.)

## COUNT SIX THROUGH EIGHT
(False Statements to Small Business Administration)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the loan applications set forth below, in the Eastern District of Virginia and elsewhere, LAPONDIA WALLACE, the defendant herein, aided and abetted by others, and along with other coconspirators known and unknown, knowingly made or caused to be made false statements and reports for the purpose of influencing the SBA and SBA-preferred financial entity and lender, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, as follows:

| COUNTS | DATE (on or about) | FALSE STATEMENT |
|---|---|---|
| 6 | 6/7/2020 | WALLACE [handwritten: WALLACE ALW], aided and abetted by others, claimed that she was the owner of a business entity named Pond Sweet Treats, which earned $24,000 in gross revenue in the twelve months prior to the pandemic, and employed ten employees on her loan application to the SBA. |
| 7 | 6/7/2020 | WALLACE, aided and abetted by others, claimed that Terrence Wallace was the owner of a sole proprietorship named TJT&T Trucking, which employed eight employees on a loan application to the SBA. |
| 8 | 6/23/2020 | WALLACE, aided and abetted by others, claimed that she was the owner of a sole proprietorship named Custom T Shirts, which earned $20,000 in gross revenue in the twelve months preceding January 31, 2020, and employed two employees on her loan application to the SBA. |

(In violation of Tile 18, United States Code, Sections 1014 and 2.)

## COUNTS NINE AND TEN
(Aggravated Identity Theft)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. On or about the dates and in the manner set forth below, in the Eastern District of Virginia and elsewhere, LAPONDIA WALLACE, the defendant herein, aided and abetted by others, and along with coconspirators known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally transfer, possess, and use, without lawful authority, a means of identification of another during and in relation to felony violations of provisions contained in Chapter 63 of Title 18, to wit: wire fraud, in violation of Title 18, United States Code 1342 and mail fraud, in violation of Title 18, United States Code, Section 1341.

| Counts | Date (on or about) | Description of Transaction | Felony Violation(s) |
|---|---|---|---|
| 9 | 5/27/2020 | Without lawful authority, the defendant used Terrence Wallace's personal identifiers, including his social security number and a bank account number (last four digits: 0169), resulting in the wire transfer of fraudulently obtained unemployment benefits. | 18 U.S.C. § 1342 (ref. Count 3) |
| 10 | 8/04/2020 | Without lawful authority, the defendant used D.C.'s personal identifiers, including his date of birth and the last four digits of his social security number, causing the mailing of a VEC Way2Go card to the defendant's address in Newport News, which was subsequently loaded with fraudulently obtained unemployment benefits. | 18 U.S.C. § 1344 (ref. Count 5) |

(In violation of Title 18, United States Code, Sections 1028A and 2.)

13

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts One through Eight of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461.)

UNITED STATES v. LAPONDIA WALLACE
4:23-cr-66

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

_____
FOREPERSON

Jessica D. Aber
United States Attorney

By: _____
Alyssa Levey-Weinstein
Special Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4019
Fax:    (757) 591-0866
Email: Alyssa.Levey-Weinstein2@usdoj.gov

By: _____
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4028
Fax:    (757) 591-0866
Email: mack.coleman@usdoj.gov

15